## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **THERESA RUSSELL** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:18-cv-163** |
| | ) | |
| **JEFFERSON B. SESSIONS, Attorney** | ) | |
| **General, *et al.,*** | ) | |
| **Defendants.** | | |

## MEMORANDUM OPINION

Plaintiff Theresa Russell, an employee of the United States Marshals Service ("USMS") for almost two decades, applied, but was not selected, for a Supervisory Management and Program Analyst GS-15 position in the USMS's Judicial Security Division ("JSD"). She alleges her non-selection was the result of gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*. Defendants, however, contend that the male candidate selected over plaintiff for the position was chosen because his work experience and interview responses confirmed him as the most qualified candidate.

At issue following discovery is whether defendants are entitled to summary judgment on the basis of the undisputed factual record. The parties have fully briefed and argued the issue, and it is now ripe for disposition. For the reasons set forth herein, defendants' motion must be granted.

### I.

Summary judgment is appropriate only where there are no genuine disputes of material fact, Fed. R. Civ. P. 56. Accordingly, the record facts as to which no genuine dispute exists must first be identified. To this end, Local Rule 56(B) directs a movant for summary judgment to

1

include a section listing, in numbered-paragraph form, all material facts as to which the movant

contends no genuine dispute exists. The nonmovant must then respond to each numbered

paragraph, either admitting or contesting the putative undisputed fact and citing admissible

record evidence to establish a genuine dispute of material fact. The nonmovant's failure to

respond to a fact listed by the movant constitutes an admission that the listed fact is undisputed.

Both parties have essentially complied with the Local Rule. Accordingly, the facts recited here

are derived from the parties' lists of material facts and their respective responses.

- Plaintiff is an employee of the United States Marshals Service ("USMS"), a federal law enforcement agency. She began her employment with the USMS in the Judicial Security Division ("JSD") in August 2000.

- The Business Integration Center ("BIC") is one of three centers that provides support for the JSD.

- John Bolen became the Assistant Director in charge of the JSD in June 2016. Deputy Assistant Directors Tom Wight and Gary Insley reported directly to Mr. Bolen.

- The USMS's Merit Promotion Plan establishes the agency's methods for making selection decisions. According to the plan, if interviews are used, candidates should be asked the same questions and interview results will be considered when making selection decisions.

- On May 13, 2016, the USMS posted a vacancy announcement for the position of Supervisory Management and Program Analyst (hereinafter "BIC Chief"), a GS-15 position that serves as head of the BIC. Qualified applicants were required to have one year of specialized experience equivalent to the GS-14 level in areas such as operational efficiency and efficacy, program management, strategic planning, and overall supervisory management. Major duties of the position include, but are not limited to, developing division program measures, data analysis, policy directives, and strategic planning and overseeing relevant research and studies.

- At the time the BIC Chief vacancy announcement was posted, Terry Bearden was serving as the Acting BIC Chief.

- The Office of Personnel Management and the USMS's Human Resources Division placed both plaintiff and Mr. Bearden, as well as other applicants, on the promotion certificate as qualified candidates for the BIC Chief position.

- Beginning in March 2010, plaintiff worked in the JSD as the Assistant Chief (GS-14) of the Administrative Support Center ("ASC"), one of the centers that provides support for the JSD. The position coordinates and facilitates the administrative needs of the JSD in areas such as human resources, time and attendance, property management, and

correspondence coordination. It also does tracking, reporting, policy devising, creation of business rules and practices, strategic planning, and website management.

- Mr. Bearden began working at the GS-14 level in 2010 with the Office of Procurement Services for the Labor Department. He joined the JSD as Assistant Chief (GS-14) of the Office of Security Contracts in late 2010. Beginning in January 2016, Mr. Bearden served as the Acting Chief (GS-15) of the BIC.

- During his tenure as Acting Chief, Mr. Bearden prepared the JSD's Quarterly Performance Review (QPR), a formal, quarterly briefing between the Assistant Director of each USMS division and the agency's top executives. Each Assistant Director discusses his or her division's performance with respect to different performance metrics. The BIC Chief prepares the materials for the JSD's QPR and the JSD's Assistant Director for the briefing. He or she also provides the Assistant Director with support during the briefing.

- According to Mr. Bearden's resume, while he served as BIC Chief, he also (i) developed and directed division program measures, data analysis, policy directives, strategic planning, metric development, and database creation; (ii) served as JSD's point of contact for strategic planning; (iii) oversaw research relevant to the JSD; (iv) conducted program reviews and assessments for business process improvements; and (v) performed data management functions to advise on statistical trending.[1]

- On July 11, 2016, a three-member panel (consisting of Mr. Insley and Mr. Wight, then the two Deputy Assistant Directors, and Chad Nieboer, a former BIC Chief) interviewed four candidates, including plaintiff and Mr. Bearden, for the BIC Chief position. Two of the candidates were women and two were men. The purpose of the interviews was to recommend, from among the candidates interviewed, the best qualified candidate for the position.

- During the interviews, the panelists asked the candidates the same core set of questions in order to provide an objective basis for comparison.

- Two of the three panelists, Mr. Wight and Mr. Insley, recommended Mr. Bearden to the Selecting Official, Mr. Bolen. The third panelist, Mr. Nieboer, did not recommend any of the four candidates.[2]

- Mr. Insley explained that Mr. Bearden "was more qualified for the position" of BIC Chief than plaintiff because of "the responses to the interview questions and the experience which would be reflected in the response." He thought Mr. Bearden's interview responses

---

[1] Plaintiff correctly notes that Mr. Insley did not testify about all of Mr. Bearden's responsibilities as Acting BIC Chief. However, this fails to create a genuine dispute of material fact because plaintiff does not dispute that Mr. Bearden listed these responsibilities on his resume nor does plaintiff dispute that Mr. Bearden performed these responsibilities.

[2] Although defendants contend the panel was unanimous, a careful parsing of the record indicates that Mr. Nieboer stated in his EEO Affidavit that he "didn't recommend any of the candidates" because he "didn't think any of them were qualified." Aff. Nieboer at 88–89. However, whether the panel was 3-0 in favor of Mr. Bearden or 2-1 in favor of Mr. Bearden with the lone dissenter preferring to open the process to additional candidates does not affect the integrity of defendants' legitimate, nondiscriminatory justification for Mr. Bearden's selection. Nor does it show defendants' justification for the selection is pretextual.

were more detailed and demonstrated greater understanding of the questions asked. Mr. Insley also cited Mr. Bearden's experience with the QPR and his MBA when asked why he recommended Mr. Bearden.

- Mr. Wight stated that he recommended Mr. Bearden because he thought Mr. Bearden's interview responses were more detailed, articulate, focused and thoughtful and that they demonstrated greater insight into the relevant skills for BIC Chief. Mr. Wight also stated that he thought Mr. Bearden had performed effectively as Acting BIC Chief, including his preparation for the QPR.

- Mr. Nieboer would have preferred to open the process to more candidates rather than recommend one of the four interviewed. Although he did not say so in his EEO Affidavit, he later stated that, despite this preference, he recommended Mr. Bearden out of the candidates interviewed. He explained that this was "because [of] the leadership skill set that [Mr. Bearden] possessed and demonstrated . . . [h]e could build those coalitions that he could lead the different competing factions if you will of any office environment to get the job done." Mr. Nieboer stated that he formed his opinion on the basis of Mr. Bearden's interview responses.

- Mr. Bolen adopted the panel's recommendation and selected Mr. Bearden to fill the BIC Chief position. He emailed the JSD announcing his selection on July 20, 2016.

- Plaintiff's gender was not discussed in connection with the selection process for BIC Chief.

## II.

The summary judgment standard is well settled and thus undeserving of elaboration. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff has not proffered direct evidence of gender discrimination and so must proceed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, plaintiff must first "establish a prima facie [case of gender discrimination] by showing that (1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her

application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). Only a preponderance of the evidence is required to establish a *prima facie* case. *Evans v. Technologies Applications & Services Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996). In the event plaintiff establishes a *prima facie* case, defendants may rebut by articulating a legitimate, nondiscriminatory justification for their promotion decision. *Anderson*, 406 F.3d at 268. To overcome the legitimate, nondiscriminatory justification, plaintiff must establish that the proffered justification is pretextual. *Id.*

Plaintiff "can prove pretext by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the" USMS's given justification. *Moore v. Mukasey*, 305 Fed.Appx. 111, 116 (4th Cir. 2008) (quoting *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006)). The latter may be established by showing the purported justification is false or "unworthy of credence." *Anderson*, 406 F.3d at 269. Importantly, plaintiff may not "seek to expose [USMS's] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006).

### III.

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Rather, it is a "relatively easy test." *Evans*, 80 F.3d at 960. Indeed, the Supreme Court found a *prima facie* case of age discrimination where plaintiff, a member of a protected class, was fired from a position for

which he was qualified and three younger people were subsequently hired to fill the position. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

Here, plaintiff satisfies her burden of establishing a *prima facie* case because (i) as a female, she is a member of a protected group; (ii) she applied for the BIC Chief position; (iii) she was qualified for the BIC Chief position; and (iv) the USMS selected a man to fill the position. Defendants do not dispute that plaintiff has established a *prima facie* case of gender discrimination, thereby shifting the burden to defendants to establish a legitimate, nondiscriminatory reason for their selection of Mr. Bearden.

Defendants have done so; they have provided a legitimate, nondiscriminatory justification for Mr. Bearden's selection by asserting that the panel concluded Mr. Bearden's interview responses and job experience confirmed him as best qualified for the BIC Chief position. Plaintiff's contention that defendants' justification is insufficiently specific fails to undermine this conclusion because the burden is only one of production,[3] defendants have amassed abundant specific record evidence, and the Fourth Circuit maintains that candidates' qualifications and job performance "are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans,* 80 F.3d at 960.

The Supreme Court has further explained that, because the employer's burden is merely one of production, it "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981). Although plaintiff is correct the "legitimate reasons must be clear and reasonably specific,"[4] defendants point to ample evidence that the panelists recommended Mr. Bearden over plaintiff on the

---

[3] *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

[4] *Id.* at 258.

specific basis of his interview answers and job experience. Mr. Insley explained the panel

thought Mr. Bearden was more qualified than plaintiff because of the former's "responses to the

interview questions and the experience which would be reflected in the response." Insley Dep. at

34:22–35:7. *See also* Def.'s Resp. to Pl.'s Interrog. No. 3. Mr. Insley also explained that,

comparing plaintiff's and Mr. Bearden's experiences as USMS employees on the basis of their

interview responses and resumes, "the panel felt that [Mr. Bearden] was more qualified for the

position" of BIC Chief. Aff. Insley at 63–64. Mr. Wight thought that Mr. Bearden

"demonstrated . . . through his performance and through the interview a more analytical

acumen." Aff. Wight at 77. Mr. Wight also stated that he "found Mr. Bearden to have performed

effectively as Acting BIC Chief." Def.'s Resp. to Pl.'s Interrog. No. 3. Although Mr. Nieboer

initially said that he did not recommend any of the candidates interviewed, he later said that he

believed Mr. Bearden "was the best choice among the candidates interviewed for BIC Chief

because Mr. Bearden had broader experience relevant to the position." Def.'s Resp. to Pl.'s

Interrog. No. 3. And Mr. Nieboer further explained that he preferred Mr. Bearden out of the four

candidates interviewed because of "his responses during the interview." Nieboer Dep. at 82:21–

83:22. Indeed, defendants did more than merely provide evidence showing the panelists

recommended Mr. Bearden because of his better interview answers and job experience.

Defendants also cited to record materials that detail ways in which Mr. Bearden's interview

responses and job experience were superior to plaintiff's. Mr. Insley elaborated that Mr.

Bearden's interview responses were better than plaintiff's because they "provided a better

understanding of the questions asked." Aff. Insley at 65. Mr. Wight explained that, on the basis

of Mr. Bearden's performance and interview responses, he "demonstrated . . . more analytical

acumen, seeing big pictures and how to demonstrate performance, capture performance,

developing metrics, performance measures that would capture performance within the Judicial Security Division and the Judicial Security mission for the Agency as a whole." Aff. Wight at 77–78. In addition, Mr. Wight thought Mr. Bearden's interview revealed that "[h]e had greater understanding, far greater understanding of the subject matter compared to other candidates." Wight Dep. at 93:3–8. Mr. Nieboer, in his EEO affidavit, explained that Mr. Bearden had greater experience than plaintiff because he had "compil[ed] . . . and put[] . . . together" information for the QPR. Aff'd Nieboer at 90–91. Mr. Nieboer later stated that, although his preference would have been to open the process to more candidates, he preferred Mr. Bearden over plaintiff and the other candidates interviewed because Mr. Bearden's interview responses revealed a "leadership skill set that [he] possessed and demonstrated, talked about, the ability to get people to respond that weren't direct reports . . . [h]e could build those coalitions that he could lead the different competing factions if you will of any office environment to get the job done." Nieboer Dep. at 82:21–83:22. In sum, defendants have provided ample evidence establishing the panelists selected Mr. Bearden because his work experience and interview responses confirmed him as most qualified. Moreover, defendants have also provided ample evidence detailing ways in which Mr. Bearden's work experience and interview responses were superior to plaintiff's.

Contrary to plaintiff's suggestion, the Fifth Circuit cases she cites, *Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007) and *Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004), do not support the conclusion that defendants' justification fails for lack of specificity. These cases are easily distinguished. The Fourth Circuit characterized *Alvarado* as a case in which the employer "provided no explanation for how the interviewers arrived at the scores for each question," distinguishing *Alvarado* from the case then before that Court in which the employer explained plaintiff's lower score resulted from her comparative lack of technical expertise notwithstanding

her greater experience, thus defeating plaintiff's claim that the justification was insufficiently specific. *Harris v. Mayor & City Council of Baltimore*, 429 F. App'x 195, 204 (4th Cir. 2011). And the Fifth Circuit's decision in *Patrick* is equally inapposite here. There, the Fifth Circuit clarified that, although an employer that merely found a plaintiff was "not 'sufficiently suited'" for a position failed to provide adequate detail, explaining the employee "was not 'sufficiently suited' to fill the . . . position because of her experience, credentials, attitude, or some other articulable characteristic . . . might have provided enough detail." 394 F.3d at 317. The USMS's justification is analogous to the latter, as defendants have explained Mr. Bearden was most qualified *because of* his interview responses and work experiences and even elaborated ways in which he stood out in these areas. *See, e.g.,* Aff. Insley at 65; Aff. Wight at 77–78; Wight Dep. at 93:3–8; Aff'd Nieboer at 90–91; Nieboer Dep. at 82:21–83:22.

Plaintiff's argument that defendants' subjective assessments are not, as required, grounded in a clear and specific basis also fails. Plaintiff does not cite to any Fourth Circuit cases imposing such a requirement.[5] And plaintiff does not cite to any record evidence that she alleges constitutes a failure by the USMS to adequately support its subjective assessments. Defendants, on the other hand, provide evidence of the panelists' explanations for their subjective assessments.[6] And, notably, the Fourth Circuit has relied on subjective assessments in upholding

---

[5] Moreover, it appears defendants have satisfied the Fifth Circuit requirement plaintiff cites that "the employer [must] articulate[] a clear and reasonably specific basis for its subjective assessment." *Alvarado,* 492 F.3d at 616. Defendants clearly and specifically explained the panel concluded Mr. Bearden was most qualified based on his interview responses and work experiences. *See, e.g.,* Insley Dep. at 34:22–35:7; Aff. Insley at 63–64; Aff. Wight at 77; Wight Dep. at 39:14–40:21; Aff. Nieboer at 90–92; Nieboer Dep. at 82:21–83:22. And defendants provided examples of why the panelists thought Mr. Bearden's interview responses and job experience were superior, further establishing the basis for their assessment. *See, e.g.,* Aff. Insley at 65; Aff. Wight at 77–78; Wight Dep. at 93:3–8; Aff'd Nieboer at 90–91; Nieboer Dep. at 82:21–83:22.

[6] For example, Mr. Wight explained his decision to recommend Mr. Bearden on the basis of Mr. Bearden's interview responses because they revealed that he had "far greater understanding of the subject matter compared to the other candidates, and articulated that and made a much stronger case for himself as being the best qualified candidate far and away." Wight Dep. at 93:3–10.

an employer's legitimate, nondiscriminatory justification. *See, e.g., Hux v. City of Newport News*, 451 F.3d 311, 316–19 (affirming summary judgment for the employer after it chose not to select plaintiff in part based on her interview performance).

Accordingly, in light of the specific record evidence defendants have marshalled and the Fourth Circuit's conclusion that qualifications and job performance are "widely recognized" as legitimate, nondiscriminatory justifications sufficient to rebut a plaintiff's initial showing,[7] defendants have successfully articulated a legitimate, nondiscriminatory justification for Mr. Bearden's selection and the burden shifts back to plaintiff to prove that justification is pretextual.

This does not end the analysis, as plaintiff makes five arguments to support her contention that defendants' proffered legitimate, nondiscriminatory justification is a pretext for gender discrimination. Each of these arguments fails.

First, plaintiff alleges that defendants have varied their explanation for plaintiff's non-selection throughout the course of this dispute, thereby evincing pretext. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 850 (4th Cir. 2001). This argument fails because although the panelists did not always give the same examples of ways in which Mr. Bearden was more qualified than plaintiff throughout the various stages of this dispute,[8] their explanation that Mr. Bearden was chosen because he was most qualified by virtue of his interview responses and work experience has remained constant throughout. *See, e.g.,* Def.'s Resp. to Pl.'s Interrog. No. 3; Aff. Insley at 63–64; Insley Dep. at 34:22–35:7; Aff. Wight at 77; Wight Dep. at 39:14–40:21; Aff. Nieboer at 90–92; Nieboer Dep. at 82:21–83:22. The statements in the panelists' EEO

---

[7] *Evans*, 80 F.3d at 960.
[8] For example, Mr. Wight specifically referenced Mr. Bearden's QPR experience in his interrogatory responses but did not do so in his EEO affidavit or deposition. *See* Aff. Wight at 77–78; Def.'s Resp. to Pl.'s Interrog. No. 3; Wight Dep. at 94:3–7.

affidavits, interrogatory responses, depositions, and interview notes, although varying in their examples and level of detail, are neither contradictory nor inconsistent.

Plaintiff's charts supporting her allegation that defendants have provided conflicting reasons for their selection decision are misleading and are not evidence of pretext. The charts purport to reveal the "[c]ontradictory [r]easons" given by the panelists for their recommendation of Mr. Bearden. Importantly, plaintiff's charts fail to include the defendants' proffered justification for their selection decision, namely that Mr. Bearden was most qualified based on his job experience and interview responses. Instead, the charts track various examples the panelists gave of ways in which Mr. Bearden's job experience and interview responses made him most qualified for the BIC Chief position. To be sure, these examples varied somewhat throughout the course of the dispute, but this does not undermine the validity of defendants' legitimate, nondiscriminatory justification that Mr. Bearden was most qualified on the basis of his interview responses and work experience.[9] Significantly, the Fourth Circuit has cautioned that "the plaintiff cannot seek to expose [the defendant's justification] as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). Indeed, the "suggestion that summary judgment is precluded by pinprick objections to an employer's non-discriminatory justification would place routine personnel decisions in judicial hands." *Id.* at 313.

Moreover, the Fourth Circuit has sensibly upheld the granting of summary judgment to employers in Title VII cases in which the employer's explanation has changed over time when

---

[9] For example, plaintiff charts the instances in which Mr. Wight did and did not specifically discuss Mr. Bearden's QPR experience and greater analytical acumen. *Mem. Supp. Pl.'s Opp'n Defs.' Renewed Mot. Summ. J.* 8. Yet whether Mr. Wight addressed Mr. Bearden's QPR experience or analytical acumen on a particular occasion does not affect whether defendants' proffered legitimate, nondiscriminatory justification—that Mr. Bearden was most qualified based on his interview responses and work experience—changed over time. Instead, it merely reflects the level of detail Mr. Wight provided in his responses.

the given reasons are not materially inconsistent, as such a case presents no question of material fact on the issue of pretext. *See, e.g., Freeman v. N. State Bank*, 282 F. App'x 211, 216–17 (4th Cir. 2008) (upholding summary judgment where plaintiff "assert[ed] that the [defendant's] reasons were inconsistent" because "although the [defendant's] explanations may have varied in depth and detail, they were not materially inconsistent"); *Baldwin v. England*, 137 F. App'x 561, 564 (4th Cir. 2005) (employer's "proffer of consistent, though varying, reasons that [plaintiff] could not be promoted fails to support an allegation that any of those reasons are false, much less that all of them are a pretext for discrimination"). In contrast, the Fourth Circuit has found inconsistent justifications provide evidence of pretext in more extreme cases that are inapposite here. For example, it affirmed a finding of pretext where the selecting official offered an additional justification at trial after stating in his deposition that there were no other qualities that distinguished the promoted employee from the plaintiff. *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 646–47 n.1 (4th Cir. 2002). The cases plaintiff cites are similarly inapplicable. In *EEOC v. Sears Roebuck & Co.*, the supervisor admitted that she gave an inaccurate reason for her employer's failure to hire plaintiff to the EEOC. 243 F.3d 846, 850 (4th Cir. 2001). And in a claim under the Americans with Disabilities Act in *Jacobs v. N.C. Admin. Office of the Courts*, notes that purportedly "reflect[ed] . . . the reasons for firing [plaintiff] concern[ed] her disability, use of sick leave, and request for accommodation; none concerned the justifications raised during the course of litigation." 780 F.3d 562, 575–76 (4th Cir. 2015).

Additionally, plaintiff's objection that Mr. Nieboer did not recommend any of the candidates fails to create a genuine dispute of material fact. Although Mr. Nieober stated in his EEO Affidavit that he "didn't recommend any of the candidates" because he "didn't think any of them were qualified," he clarified in his deposition that although he would have preferred

looking for candidates outside of the agency, he agreed that, of the four candidates interviewed by the panel, Mr. Bearden was the best.[10] Aff. Nieboer at 88–89; Nieboer Dep. 80:13–83:12. More importantly, and dispositive here, is that the majority of the panel recommended Mr. Bearden.[11] That the majority of the panel, rather than a unanimous panel, recommended Mr. Bearden fails to undermine the legitimacy of defendants' proffered legitimate, nondiscriminatory justification.

Second, plaintiff argues that defendants' argument suffers from "[c]redibility issues" constituting evidence of pretext. To the extent plaintiff's argument rests on the purported changing reasons for promoting Mr. Bearden rather than plaintiff, that argument is addressed fully above. In sum, although the panelists sometimes provided varying levels of detail and different examples in their EEO affidavits, interrogatory responses, depositions, and interview notes, their explanation that Mr. Bearden was selected because he was most qualified by virtue of his interview responses and work experience remained constant.

To the extent plaintiff's credibility argument rests on the purported inconsistencies she raises in her brief's supplemental pages,[12] these do not create a genuine dispute of material fact regarding defendants' credibility. That plaintiff received a positive performance evaluation signed by Mr. Insley does not cast doubt on his assessment months later that Mr. Bearden was better qualified for the role of BIC Chief. Pl.'s Ex 6. As the Fourth Circuit has recognized, a performance evaluation is distinct from a promotion decision. *Anderson v. Westinghouse*

---

[10] Mr. Nieboer stated that "what was presented to us was four candidates and who's the best out of that four. And we all agreed that it was [Mr. Nieboer]. So it's not that they were saying—there wasn't a disagreement amongst us. It was more my point that I thought they could get a higher caliber candidate outside of the agency. But that wasn't our task. It was we had these four people and who's the best for the job." Nieboer Dep. 81:10–18.

[11] Notably, the lone dissenter, Mr. Nieboer, did not recommend plaintiff but instead wished to open the selection process to more candidates. Nieboer Dep. at 80:20–81:18.

[12] Plaintiff's Motion for Leave to File a Supplemental Memorandum was granted. Order, July 13, 2018.

*Savannah River Co.*, 406 F.3d 248, 271–72 (4th Cir. 2005) (explaining the difference between a performance evaluation and promotion decision). The former addresses how an employee functions in her current position whereas the latter forecasts how she will function in a different position.[13] *Id.* Moreover, there is no evidence plaintiff's positive evaluation was seen by Mr. Wight or Mr. Nieboer (a fact the Fourth Circuit noted in *Anderson*) nor does plaintiff contend defendants made the promotion decision on the basis of performance evaluations. 406 F.3d at 272. Plaintiff "cannot establish pretext by relying on criteria of her choosing when the employer based its decision on other grounds."[14] *Id.* at 271.

Third, plaintiff alleges defendants failed to follow hiring policies, a defect that she argues constitutes evidence of pretext. Yet even if plaintiff's claim that defendants failed to follow hiring policies were true, it would not constitute evidence of pretext because the failures would affect all candidates equally.[15]

---

[13] Indeed, Mr. Wight explained that "although . . . [plaintiff] is a very good employee," he thought "her skills were different from what was sought in the position she was competing for." Aff. Wight at 78.

[14] The other purported inconsistencies plaintiff raises are equally unpersuasive. There is nothing inconsistent about Mr. Nieboer identifying "deference to operational employees" as Mr. Bearden's weakness and recommending Mr. Bearden over plaintiff in part because of his leadership skills. *See* Defs.' Ex. 21, 139; Pl.'s Ex. 4, 82:21–83:12. An employee with strong leadership skills may at times defer to other employees. Nor were defendants inconsistent in choosing Mr. Bearden over plaintiff as most qualified to head the BIC even though plaintiff was involved in the BIC planning. Pl.'s Ex. 1, 3. Even an employee integral to the development of a position may not be most qualified to assume that position. Equally unpersuasive is plaintiff's suggestion that Mr. Nieboer contradicted himself by identifying plaintiff's strategic thinking as a weakness yet also noting as an opportunity that she "would grasp analytics, [strategic plan] and [enterprise risk management]" because "she knows how to use Excel spreadsheets." Defs.' Ex. 21, 139; Pl.'s Ex. 4, 37:4–13. Knowledge of a computer program such as Excel is not proof of strong strategic thinking skills, nor is the possibility that plaintiff "would grasp analytics" inconsistent with weak strategic thinking skills. Furthermore, that the panelists did not recall specific answers that made Mr. Bearden's interview better than plaintiff's does not undermine the integrity of defendants' legitimate, nondiscriminatory justification, as they identified ways in which Mr. Bearden's answers were superior. *See, e.g.*, Aff. Insley at 65; Aff. Wight at 77–78; Wight Dep. at 93:3–8; Nieboer Dep. at 82:21–83:22. Finally, that much of Mr. Bearden's resume copied the duties on the BIC Chief vacancy announcement does not establish that defendants' legitimate, nondiscriminatory justification is pretextual. Defs.' Ex. 15; Defs.' Ex. 19. Importantly, plaintiff does not dispute that Mr. Bearden performed the duties listed on his resume. Pl.'s Mem. Opp'n Summ. J. 14.

[15] By order dated April 20, 2018, plaintiff's argument was rejected on the same grounds. Order, 7–8, Apr. 20, 2018. ("Information related to [defendants'] alleged failure to follow OPM regulations by allowing Bearden to serve as Acting Director for more than 120 days or by preselecting him for the role of BIC Chief . . . is not relevant or material to the issue of plaintiff's alleged non-selection on the basis of gender . . . .").

Plaintiff does not clearly identify the alleged policy failures in her brief, but defendants seem to have successfully surmised the following alleged failures: (i) the duration of Mr. Bearden's tenure as Acting BIC Chief violated OPM policy, (ii) the panelists neither received training nor studied the USMS's hiring policies, (iii) the panelists improperly considered factors not contained in the candidates' application materials and interviews, (iv) the panelists did not formally rate or rank the candidates, and (v) the panelists did not ask follow-up questions. Although defendants dispute that plaintiff has established that defendants failed to follow policy in selecting the BIC Chief, the dispute is not material because an employer's failure to follow policy that affects all candidates equally does not establish pretext.[16]

Plaintiff also makes much of Mr. Wight's failure to take notes during the interview and defendants' lack of evidence proving Mr. Nieboer's notes were made contemporaneously with the interviews. Defs.' Ex. 35, 9; Pl.'s Ex. 2, 17:18–21:10. Yet the panelists' notetaking practices—or lack thereof—do not establish pretext here. Plaintiff has not provided any evidence that the panelists were required to take notes, or more importantly, that they took notes selectively during the interviews. Nor does the Fifth Circuit case plaintiff relies on, *Alvarado v.*

---

[16] *See Bush v. Carter*, 597 F. App'x 178, 179 n.1 (4th Cir. 2015) (plaintiff's "contentions that there were inconsistencies and irregularities in the application and selection process were properly discounted by the district court as failing to demonstrate that they were probative of racial discrimination and as insufficient as a matter of law to establish pretext"); *Moore v. Mukasey*, 305 F. App'x, 111, 117 (4th Cir. 2008) (potential policy violation whereby employee selected for promotion to Unit Chief was allegedly allowed to serve as Acting Unit Chief for more than authorized 120-day period did not establish pretext); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (that employer may have preselected an employee for a promotion in racial discrimination case is insufficient to establish pretext because it "would work to the detriment of all applicants for the job, black and white alike"). Of course, an employer's *selective* failure to follow policy may evince pretext. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 299 (4th Cir. 2010) ("a trier of fact could reasonably find that [the employer's] selective application and ever-changing rationales for [the test used to disqualify plaintiff] were designed to conceal an intent to reserve the . . . positions for male drivers only"); *Mohammed v. Cent. Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932, 952 (E.D. Va. 2015) (although "an employer's failure to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent," an employer's "selective, erratic, or case-by-case application" of a policy "may suggest pretext") (internal quotations omitted). Yet plaintiff makes no allegation that the USMS's alleged failure to follow policy was selective. Rather, the defects plaintiff alleges affected each applicant to the BIC Chief role, including the male candidate that was ultimately selected.

*Texas Rangers*, 492 F.3d 605, 615 (5th Cir. 2007), to support her argument persuade. There, the Fifth Circuit found the employer's lack of notes relevant where the employer proffered plaintiff's "failure to score among the top ten candidates in the promotion and selection process" as its legitimate, nondiscriminatory justification yet "offered neither an explanation nor evidence of how or why the interviewers arrived at [the given interview] scores" and failed to "provide[] any evidence of why [it] rated the other candidates . . . higher than" plaintiff. *Id.* at 615–17. The absence of notes was relevant because an interview score—the employer's proffered legitimate, nondiscriminatory justification—absent more, is equally consistent with discrimination as not. *Id.* at 617. In contrast to *Alvarado*, defendants' legitimate, nondiscriminatory justification here (i.e., that Mr. Bearden was best qualified, as evidenced by his interview responses and work experience) is not equally consistent with discrimination as not. Moreover, defendants provided evidence of why the panelists viewed Mr. Bearden's interview responses and work experience as superior, evincing that the selection decision was legitimate and not discriminatory. *See, e.g.,* Def.'s Resp. to Pl.'s Interrog. No. 3; Aff. Insley at 65; Aff. Wight at 77–78; Wight Dep. at 93:3– 8; Aff'd Nieboer at 90–91; Nieboer Dep. at 82:21–83:22.

Fourth, plaintiff alleges that she is substantially more qualified than Mr. Bearden.[17] Although it is well established that a Title VII plaintiff may establish pretext by showing that she is substantially more qualified than the promoted employee, it is equally well established that showing one's qualifications are "similar or only slightly superior" is insufficient to establish

---

[17] Notably, following the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Fourth Circuit explicitly eliminated the requirement that Title VII plaintiffs must prove substantially superior qualifications. *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 648 n.4 (4th Cir. 2002). Rather, courts "can infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Anderson*, 406 F.3d at 269 (quoting *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 648 n.4 (4th Cir. 2002)). Accordingly, plaintiff "can prove pretext by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Moore v. Mukasey*, 305 Fed.Appx. 111, 116 (4th Cir. 2008) (quoting *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006)).

pretext. *Moore v. Mukasey*, 305 F. App'x 111, 116 (4th Cir. 2008). Even when all factual disputes are resolved in her favor, plaintiff has failed to demonstrate that her qualifications are substantially superior to Mr. Bearden's.

Both plaintiff and Mr. Bearden served in GS-14 positions for six years prior to the BIC Chief selection at issue. Defs.' Ex. 18, 119; Defs.' Ex. 19, 126–27. And each had experience the other did not. Plaintiff acknowledges that, consistent with defendants' proffered legitimate, nondiscriminatory justification, Mr. Bearden had experience relevant to the BIC Chief position, namely he served as the Acting BIC Chief for five months. Defs.' Ex. 19, 126. And Mr. Bearden, unlike plaintiff, had experience conducting QPRs.[18] Defs.' Ex. 35, 11–12; Aff. Russell at 41. On the other hand, plaintiff's position, unlike Mr. Bearden's, was in the same job series as the BIC Chief. Defs. Ex. 1, 150. Plaintiff claims to have performed "duties associated with the job announcement" of the BIC Chief from March 2010 to November 2014. Pl.'s Ex. 1, 1. Although defendants dispute this contention, even taken in the light most favorable to plaintiff, plaintiff's experience is not so substantially superior as to make defendants' justification pretextual. That plaintiff did not perform a single QPR during that time reveals that she did not perform all of the BIC Chief's duties. And although Mr. Bearden served as Acting BIC Chief for only five months, plaintiff does not contend that he failed to perform all of the BIC Chief's duties. Where plaintiff's purported qualifications are "only slightly superior to those of the person eventually selected, the promotion decisions remains vested in the sound business judgment of the employer." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249 (4th Cir. 2006). Indeed, the Fourth Circuit has recognized that a plaintiff's superiority to the selectee in one relevant area

---

[18] Although plaintiff is correct that the BIC Chief job announcement did not include conducting QPRs as one of the position's duties, it is undisputed that the BIC Chief is responsible for conducting QPRs. Defs.' Ex. 15; Defs.' Ex. 35, 19.

does not establish pretext when the decision was also based on other factors. *Harris v. Mayor &*
*City Council of Baltimore*, 429 F. App'x. 195, 204 (4th Cir. 2011). Here, defendants did not base
their decision as to which candidate was most qualified solely on work experience, but also
considered the candidates' interview responses. Additionally, the Fourth Circuit has recognized
that an employee's tenure as an Acting Unit Chief may strengthen the employer's argument that
the experience makes the employee more qualified for the position. *Moore*, 305 F. App'x, at 117.

Plaintiff argues other evidence supports her claim that she is more qualified than Mr.
Bearden for the role of BIC Chief. For example, she points to a positive performance evaluation
from one of the panelists, an email remarking that she had "great insight and suggestions," and
the candidates' respective clearance levels. Pl.'s Ex 6; Pl.'s Ex. 8; Pl.'s Mem. Opp'n Summ. J. 9.
Yet, these do not create a genuine dispute of material fact because only the bases on which
defendants made the promotion decision—qualifications as determined by interview responses
and work experience—are relevant. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d
248, 269 (4th Cir. 2005). Plaintiff does not allege that the record indicates defendants considered
these factors in its promotion decision. Importantly, plaintiff "cannot establish her own criteria
for judging her qualifications for the promotion. She must compete for the promotion based on
the qualifications established by her employer." *Id.* Fourth Circuit "case law makes plain that
[plaintiff's] self-assessment of [her] superior aptitude for the position fails to rebut the
Government's legitimate explanation." *Moore*, 305 F. App'x at 116.

Additionally, plaintiff submits evidence purporting to establish that the panelists were
incorrect about the nature of her current job, the accuracy of her resume, and the strength of her
leadership skills. *See* Defs.' Ex. 35, 15–16; Pl.'s Ex. 6, 1–2; Defs.' Ex. 18, 119; Pl.'s Ex. 4, 44:4–
17; Pl.'s Ex. 1, 2; Defs.' Ex. 21, 139; Pl.'s Ex. 6, 4. Yet plaintiff's disagreement with the

panelists' assessment of her credentials does not raise a genuine dispute of material fact. As the Fourth Circuit has made clear, "[it] is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotations omitted). Courts are not "super-personnel department[s] weighing the prudence of employment decisions made by firms charged with employment discrimination." *Id.* (internal quotations omitted). Rather, their "sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory . . . it is not [the courts'] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it was truly the reason for the" employment decision. *Id.*

Fifth, and finally, plaintiff alleges that defendants have a history of gender discrimination. Yet plaintiff fails to provide evidence that constitutes appropriate comparator evidence or establishes a general pattern or practice of discrimination.

To the extent plaintiff's chart constitutes comparator evidence, it is insufficient because plaintiff has not established the circumstances surrounding those selection decisions were sufficiently similar. Indeed, plaintiff does not even allege that they are. Suppl. Pages Summ. J. Opp'n 1. Plaintiff is correct that comparator evidence is not necessary to succeed on a discrimination claim under Title VII. *Bryant v. Aiken Regional Medical Centers, Inc.*, 333 F.3d 536, 545–46 (4th Cir. 2003). However, as defendants point out, when a Title VII "plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination . . . [t]he similarity between comparators . . . must be clearly established." *Swaso v. Onslow County Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (internal quotations omitted). An earlier Order in this case identified some of the relevant comparator variables: "whether any women applied for the positions in question[], who the

selecting officials were for the positions, or whether the promotion process was in any way similar to the process at issue here." Order, 9, Apr. 20, 2018. Plaintiff has not met the burden of establishing she is "similar in all relevant respects to [her] comparator." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). Of the eight positions included in plaintiff's chart, half are GS-1811 law enforcement positions that are subject to eligibility, evaluation, and recommendation/selection procedures distinct from the procedures used to make selections decisions for non-law enforcement positions such as the BIC Chief. Defs.' Ex. 24, 157–62. Furthermore, neither the panelists nor Selecting Official involved in Mr. Bearden's selection conducted interviews or made a final decision for these law enforcement positions.[19] The non-law enforcement positions also fail to constitute satisfactory comparators. Mr. Wight, Mr. Nieboer, and Mr. Bolen had no involvement in the selection process for the three non-law enforcement positions other than BIC Chief on plaintiff's chart. Mr. Insley was not involved in the selection process for two of the three positions. And although Mr. Insley was a panelist in the 2014 interviews for a Supervisory Physical Security Specialist, defendants identify four ways in which the process differed from the BIC Chief process, making it an inadequate comparator: (i) the selectee was already a GS-15 employee and so his selection was not a promotion, (ii) there were not any women interviewed for the position because none had been certified as qualified, (iii) the interview panel included a female, and (iv) the selecting official who made the final decision was Ms. Douglas. Accordingly, plaintiff has failed to identify a selections decision that is an appropriate comparator because the selections decisions on her chart are not similar in all relevant respects. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010).

---

[19] Only Mr. Wight was involved in the process at all, and his involvement was limited to recommending two candidates to the Career Board, which then evaluated all the candidates and made recommendations to the USMS Director. Defs.' Ex. 35, 21–22.

Plaintiff similarly fails to establish that her non-selection conforms to defendants' general pattern or practice of discrimination. It is clear that, under the Title VII framework, a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant." *Swaso v. Onslow County Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017). Yet, plaintiff's evidence is insufficient to overcome summary judgment because plaintiff fails to establish that the number of female candidates selected was disproportionate compared to the number of qualified female candidates, nor does plaintiff provide an adequate sample size. Additionally, plaintiff selectively relies on certain selection decisions.

The Fourth Circuit has directed that "[i]n a case of discrimination in hiring or promoting, the relevant comparison is between the percentage of minority employees and the percentage of potential minority applicants in the qualified labor pool." *Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994). Yet plaintiff has not provided evidence comparing the number of women selected for GS-15 positions in the USMS with the number of qualified women applicants for such positions.[20] Additionally, plaintiff has failed to satisfy the requirement that statistical evidence have a sufficiently large sample size. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994). Absent a sufficient sample size, such evidence lacks probative value. *Id.* The Fourth Circuit has held that a sample size of four is too small to rely on statistical analysis in a discrimination claim under the ADEA.[21] *Id.* Here, plaintiff has pointed to only three non-law

---

[20] Plaintiff's argument that defendants have failed to produce necessary information is unpersuasive. With respect to the promotion of Mr. Haufe, Mr. Insley testified that six men—and no women—were certified as qualified candidates for the position. Defs.' Ex. 30, 93:7–100:4. And plaintiffs have not alleged defendants' disposal, pursuant to USMS records management policies, of the 2010 and 2011 promotion files for Charles Weber and Gary Insley was improper or pretextual. *See* Defs.' Ex. 35, 21. More importantly, none of the selecting officials here were involved in those decisions, makinging them inadequate comparators, and two cases is an insufficiently small sample size to constitute pattern or practice evidence. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994).

[21] The Fourth Circuit also cited approvingly a decision holding that a sample size of thirteen was too small. *See Birkbeck*, 30 F.3d at 511.

21

enforcement selection decisions (excluding Mr. Bearden's), an even smaller sample than that held to be insufficiently small in *Birkbeck. See* Defs.' Ex. 23, 148–49; 30 F.3d at 511. Furthermore, plaintiff has selected the relevant time frame without explanation for the start date.[22] It is undisputed that women were selected for GS-15 positions just outside of plaintiff's chosen period.[23] Because it is insufficient for plaintiff to rely merely on the absence of women in GS-15 positions or a small number of promotions decisions that resulted in the selection of male candidates, plaintiff has failed to demonstrate a pattern or practice of gender discrimination that constitutes evidence her non-selection was motivated by discrimination. *See, e.g., Birkbeck*, 30 F.3d at 511 ("[w]e think it improper to rely on the results of statistical analyses" when only four employment decisions are relevant); *Jackson v. Richmond City Sch. Bd.*, No. 99-cv-642, 2000 WL 34292578, at *6 (E.D. Va. Mar. 15, 2000) (evidence that twenty-four women and no men have held the relevant position, without more, insufficient to show pretext).

Plaintiff has failed to establish that defendants' legitimate, nondiscriminatory justification for Mr. Bearden's selection is pretextual. Accordingly, plaintiff's Title VII claim fails as a matter of law, and summary judgment must be granted in favor of defendants.

## IV.

For the reasons discussed above, defendants' motion for summary judgment must be granted.

---

[22] Plaintiff has identified August 2010 to July or August 2016 as the relevant timeframe. Pl.'s Counter Defs.' Statement Material Facts in Dispute 2. She began working as the Assistant Chief of the JSD's ASC (the position she held when she interviewed for BIC Chief) in March 2010 after beginning her career with the USMS in August 2000. Mr. Bearden's promotion was announced in July 2016. Defs.' Ex. 18, 119, 122; Defs.' Ex. 2, 12. Plaintiff has not provided an explanation for the time frame she has selected, and this Court cannot surmise why the period began in August 2010.

[23] Lydia Blakey (2000), Candra Symonds (2005), Nancy Gallant (2010) and Cheata Sieng (2018) were all promoted to GS-15 positions. Defs.' Ex. 32; Defs.' Ex. 33; Defs.' Ex. 34; Defs.' Ex. 9, 50; Defs.' Ex. 35, 24.

An appropriate Order will issue.

Alexandria, Virginia
August 29, 2018

/s/

T. S. Ellis, III
United States District Judge

23